# Burchett v. Louisa Light & Power Co. et al.

(Decided June 23, 1933.)

(As Modified on Denial of Rehearing October 3, 1933.)

W. D. O'NEAL for appellant.

WAUGH & HOWERTON, FRED M. VINSON and C. F. SEE, Jr., for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming on cross appeal and reversing on original appeal.

This is the second appeal of this case. The opinion on the first appeal is reported in 235 Ky. 296, 31 S. W. (2d) 373, where the facts are fully stated.

Appellant brought the suit originally against the Louisa Light & Power Company, a corporation, G. R. Vinson, Emma Vinson, T. W. Hodge, and Helen Hodge, on the theory that he owned an interest in a partnership formed in the spring of 1924, by himself, the Vinsons, and the Hodges, to build and operate an ice and electric plant, and that he was the owner of $2,500 of stock in the corporation subsequently formed. It was decided on the first appeal that he had no interest in the partnership, but that he was the owner of $2,500 of stock in the corporation. The judgment of the circuit court for $1,100 for services rendered by Burchett to the partnership and corporation was affirmed on the cross-appeal of the appellees. On the original appeal the judgment was reversed and the case remanded, with directions to adjudge Burchett entitled to 25 shares of the capital stock of the corporation and for an adjustment of the equities between the parties.

On the return of the case, numerous pleadings were filed by the defendants setting up what they conceived to be the equities. They alleged that they had advanced large sums of money to the partnership and the corporation and had rendered services for which they had not been paid, that the lot which had been conveyed to the corporation by G. R. Vinson was reasonably worth $7,500, and that the electric franchise for the city of

Louisa conveyed to the corporation by T. W. Hodge was reasonably worth $5,000, and that the Cassville franchise and physical properties owned by T. W. Hodge and included in the sale price of the corporation's property were reasonably worth $13,000. They also alleged that Hodge had paid for Burchett $2,500 and interest to discharge the Ratcliff note executed for the purchase of the stock owned by Burchett and a lien to secure this amount upon any moneys due the appellant was asked.

The appellant took the position that all of these matters had been adjudicated on the first appeal, and moved to strike all these matters from the appellees' pleadings. His motion was overruled, and the case was again referred to the master commissioner to take proof and make his findings upon all matters not decided by this court on the first appeal.

A large amount of additional evidence was heard by the commissioner, and the case was heard on exceptions to his report. The circuit court adjudged that the appellees were not entitled to any compensation for the Cassville property or the Louisa franchise. It further was adjudged that, in addition to the amount paid by appellees for their stock in the corporation, they had advanced $17,466, which was really an indebtedness of the corporation; that the net debt of the corporation paid after the sale was $2,069, the value of Vinson's lot, $7,000, and the value of the services rendered by Vinson and the Hodges over a period of three years and three months was $13,650. The net amount realized from the sale was $113,350, and it was adjudged that after the payment of the above amounts and the $1,100 adjudged to Burchett for services, amounting in all to $41,285, the balance for distribution among the stockholders was $72,065. Appellant was adjudged entitled to one-eleventh of this amount, or $6,551.36, less $350 interest paid for him by G. R. Vinson, and $2,-587.50, amount of the Ratcliff note and interest paid by T. W. Hodge, leaving the net amount due appellant $3,613.86. It was held on the former appeal that appellant was not a partner in the partnership, that he was entitled to $1,100 for labor, and that he owned 25 shares of stock of the par value of $100 each.

Appellant contends on this appeal that it also was decided on the former appeal that the cost of the plant

was about $35,000; that the total paid-in capital stock was $27,500; that G. R. Vinson paid for and to the company about $15,000; and that T. W. Hodge and Mrs. Hodge paid for and to the company about $5,000; and that the difference in the paid-in capital stock of $27,500 and the cost of the plant is represented by the profits which went back into it; and that the circuit court erred in permitting these matters to be opened up again.

A careful reading of the opinion on the former appeal will disclose that appellant is in error in these contentions. The following statement appears in the opinion:

"It is stated by Mr. Vinson that the plant had cost between $50,000 and $60,000, but the figures given in the record would indicate the cost to have been about $35,000 plus the value of the lot, which belonged to Mr. Vinson. The difference between the paid-in capital of $27,500 may be represented by the profits which seem to have been put back into the business."

This was not an adjudication of those questions but was merely a historical narrative of the proceedings incident to the purchase and sale of the plant, and the figures recited were only estimates taken from the record. In remanding the case and directing that there should be an adjustment of the equities between the parties by the circuit court, it was intended that the net value of the stock of the corporation should be ascertained by deducting from the sale price of the properties all debts of the corporation, including advancements made to it by the various stockholders, and crediting them therewith.

The business was conducted as a family enterprise, and accurate accounts were not kept, with the result that the evidence as to the advancements made by the various stockholders to the corporation and for its benefit is not entirely satisfactory. But it abundantly supports the chancellor's finding that G. R. Vinson, T. W. Hodge, and Helen V. Hodge, in addition to paying par value for their stock, advanced to the corporation $17,466. Appellant questions the value placed upon the lot deeded to the corporation by G. R. Vinson, to wit, $7,000, but the judgment of the chancellor in this respect is sustained by the evidence. The chancellor al-

lowed T. W. Hodge $250 a month for three years and three months, making a total of $9,750 for services rendered by him as manager of the business, and Mrs. Hodge, who assisted in keeping the books of the corporation, $50 per month for the same period, making a total of $1,950. He also allowed G. R. Vinson $1,950 for services rendered by him, making a total allowed to the appellees for services, $13,650, and this amount was deducted from the net sale price of the property before determining the amount available for distribution to the stockholders.

There is no doubt that G. R. Vinson exercised good business judgment in buying, managing, and selling the property in question, and that the other appellees to whom allowances were made for services did render service to the corporation, but the proof shows that none of them made, or intended to make, any charge against the corporation for services until this case was remanded on the first appeal with directions to adjust the equities. It was understood by all parties concerned that no charges for services by the appellees were to be made, and this was known to appellant when he purchased the 25 shares of stock. The knowledge that no large overhead expenses were being incurred in the form of salaries was no doubt an inducement in the purchase of his stock. We think the record clearly shows that this claim was an afterthought.

We conclude that the chancellor erred in allowing these claims of appellees for services and in deducting the sum of $13,650 from the sale price of the property in order to determine the net amount to be distributed to the stockholders. Without discussing the evidence in detail, we are of the opinion that the chancellor's findings in all other respects are correct.

Appellees have taken a cross-appeal, and argue that the chancellor failed in his judgment to give appellees credit for the sums advanced by them to the corporation, but, as we have heretofore stated, the evidence supports the chancellor's finding in this respect. It also is argued that he erred in allowing T. W. Hodge nothing for the Cassville and Louisa franchises, but it is clear that he was acting for the corporation when he procured them, and the chancellor properly adjudged that he was not entitled to compensation. On the whole

case we conclude that the net amount for distribution to the stockholders of the corporation should be $85,715 instead of $72,065. as found by the chancellor, and that appellant is entitled to one-eleventh of this amount less the $350 and $2,587.50 items found by the chancellor to be due G. R. Vinson and T. W. Hodge.

Wherefore the judgment on the cross-appeal is affirmed and on the original appeal it is reversed, with directions to enter a judgment in accordance herewith.